IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| YERIXON GERARDO RIVERA HERNANDEZ, | § § § § | |
| *Petitioner*, | § § | |
| v. | § § | CIVIL ACTION NO. 9:25-CV-00326 JUDGE MICHAEL J. TRUNCALE |
| KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; and PAMELA J. BONDI, in her official capacity as Attorney General of the United States; BRET BRADFORD, in his official capacity as Field Office Director of ICE Enforcement and Removal Operations Houston Field Office; ALEXANDER SANCHEZ, in his official capacity as Warden of the IAH Secure Adult Detention Facility; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | § § § § § § § § § § § § § § § § § § § | |
| *Respondents*. | § | |

## **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Yerixon Gerardo Rivera Hernandez's amended motion for a temporary restraining order (the Motion), filed on December 9, 2025. [Dkt. 3]. For the reasons below, the Motion is **DENIED.**

### **I. BACKGROUND**

Petitioner Yerixon Gerardo Rivera Hernandez (Hernandez) is a Honduran national who entered the United States illegally in 2019 as an unaccompanied minor. [Dkt. 4 at ¶ 25]. At some point between 2019 and 2024, the Government initiated removal proceedings against Hernandez. *See* [Dkt. 4 at 3] However, in March 2025, after Hernandez received "Special Immigrant Juvenile" (SIJ) status, making him eligible for work authorization or a visa, an immigration judge terminated those proceedings. *Id.*

1

Along with his SIJ status, Hernandez also received a grant of "deferred action," whereby the Government agreed not to pursue his removal until 2028. [Dkt. 1 at ¶ 49]. Then, in May 2025, police in Hill County, Texas arrested Hernandez for marijuana possession. *Id.* at ¶ 51. Hernandez posted bond but failed to appear for his court date and was re-arrested in September 2025. *Id.* After Hernandez pled guilty to the marijuana charge, Hill County authorities placed him in the custody of United States Immigration and Customs Enforcement (ICE). *Id.* at ¶¶ 51–52.

On November 18, 2025, the Government instituted new removal proceedings against Hernandez. [Dkt. 1-3]. Hernandez swiftly moved to terminate the new proceedings, arguing that his SIJ status and deferred action made him unremovable. [Dkt. 3 at 3]. Hernandez claims that the Government failed to timely oppose his motion to terminate, and that the Government's response did not address his deferred action. *Id.* Then, on December 2, 2025, after Hernandez filed a brief calling out the deficiencies in the Government's response, the Government terminated Hernandez's deferred action. [Dkt. 4-4]. On December 8, 2025, Hernandez filed this habeas action, challenging the legality of his detention on several grounds. [Dkt. 1]. Hernandez also moved for a temporary restraining order requiring ICE to release him immediately. [Dkt. 2]. On December 9, 2025, Hernandez filed amended versions of his habeas petition and his motion for a temporary restraining order. [Dkt. 3; Dkt. 4].

## II. LEGAL STANDARD

Habeas petitions under 28 U.S.C. § 2241 serve the "sole function" of challenging the legal basis for the petitioner's detention. *Pierre v. U.S.*, 525 F.2d 933, 935–36 (5th Cir. 1976). Section 2241 entitles five classes of prisoners to habeas relief, including prisoners held "in violation of the Constitution or laws, or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully. *Villanueva v. Tate*, No. H-25-3364, 2025 WL 2774610 at *4 (S.D. Tex. Sep. 26, 2025).

2

## III. DISCUSSION

### A. Writ of Habeas Corpus

Here, Hernandez claims to be detained in violation of four federal laws: the Immigration and Naturalization Act (INA), the INA's accompanying regulations, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act (APA). [Dkt. 3 at 4–5]. The Court addresses each in turn.

#### 1. Immigration and Naturalization Act

Hernandez first claims to be unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), which provides for the mandatory detention of "applicants for admission" who are not deemed "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). According to Hernandez, aliens who, like him, "entered [the United States] without inspection years ago," are not "applicants for admission" under section 1225(b)(2)(A). [Dkt. 4 at ¶¶ 32–33]. Instead, Hernandez argues that 8 U.S.C. § 1226(a) applies to cases like his. Under section 1226(a), an alien "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General has discretion to release or "continue to detain" aliens detained pursuant to section 1226(a). *See id.* § 1226(a)(1)–(2).

Section 1225 plainly applies to Hernandez. The statute's first sentence provides that "an alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* An alien has been "admitted" once he has made "lawful entry . . . into the United States *after inspection* and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Together, these provisions establish that an alien is an applicant for admission if he (1) entered the United States without inspection and (2) remains present in the country. *See id.*; § 1225(a)(1).

By Hernandez's own admission, he entered the United States without inspection and is still present in the country. [Dkt. 4 at ¶¶ 12, 25]. Accordingly, he is an "applicant for admission" under

3

section 1225. *See* 8 U.S.C. § 1225(a)(1). Further, by charging him with illegal entry and initiating removal proceedings against him, the Government necessarily found that Hernandez was "not clearly and beyond a doubt entitled to be admitted." *See id.* Thus, section 1225 dictates that Hernandez, an applicant for admission who was not deemed clearly and beyond a doubt entitled to be admitted, "shall be detained" during removal proceedings. *Id.* § 1225(b)(2)(A).

However, the inquiry does not end with section 1225. On its face, section 1226(a) also applies to Hernandez, since it provides that "an alien"—any alien—"may be arrested and detained" pending removal proceedings. § 1226(a). The Attorney General "may continue to detain the alien" or decide to release the alien on bond. § 1226(a)(1)–(2). Because section 1226(a) does not distinguish between aliens who are applicants for admission and those who are not, it squarely conflicts with section 1225 in cases like Hernandez's. *See* § 1225(b)(2)(A); § 1226(a). If section 1225 requires an alien's detention, the Attorney General necessarily has no discretion to release the alien. *See* § 1225(b)(2)(A). Yet, section 1226(a) purports to give the Attorney General that exact discretion. *See* § 1226(a). Something must give.

A "basic principle of statutory construction" easily resolves the conflict between the two provisions. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). When two statutes, one general and one specific, apply to the same subject matter, the more specific statute controls unless the legislature clearly intended otherwise. *See Radzanower*, 426 U.S. at 153; *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). Here, section 1225(b)(2)(A), which applies only to a narrow class of aliens, is the more specific statute. *See* 8 U.S.C. § 1225(b)(2)(A). Further, Congress did not clearly intend for section 1226(a) to displace or supersede section 1225(b)(2)(A).[1] *See Radzanower*, 426 U.S. at 153; *Morton*, 417 U.S. at 550–51. Accordingly, section 1225(b)(2)(A), not section 1226(a), applies here. *See Radzanower*, 426 U.S. at 153; *Morton*, 417 U.S. at 550–51. Because Hernandez is an applicant for

---

[1] If section 1226(a) applied in cases like Hernandez's, section 1225(b)(2)(A) would not apply anywhere. The Court doubts that Congress would have enacted section 1225(b)(2)(A) despite knowing that that it would serve no purpose.

4

admission who was not found to be clearly entitled to admission, section 1225 provides that he "shall be detained" pending removal. *See* 8 U.S.C. § 1225(b)(2)(A). Accordingly, Hernandez is not entitled to a bond hearing and the Government's failure to afford him a bond hearing does not violate the INA. *See id.*

### 2. Federal Regulations

Hernandez next argues that, even if the INA itself does not entitle him to a bond hearing, its accompanying regulations do. [Dkt. 4 at 4]. This argument suffers from two flaws, both fatal. First, the regulations that Hernandez cites are inapplicable because they apply only to aliens detained under section 1226(a). *See generally* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). No analogous regulations exist for aliens detained under section 1225(b)(2)(A), like Hernandez, since those aliens are categorically ineligible for bond. *See* 8 C.F.R. § 235.1 et seq.

Second, even if section 1226(a)'s regulations applied to Hernandez, his interpretation of those regulations is dubious. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Nothing in the text of the regulations suggests that bond hearings are absolutely required. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). The regulations state only that an alien in removal proceedings "may request" a bond hearing before he is ordered removed. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). They are silent as to when, if ever, immigration judges are required to grant bond-hearing requests. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). Because the regulations use no mandatory language and lay out no parameters for granting or denying bond-hearing requests, the Court does not read them to strictly require bond hearings. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). This reading is consistent with the discretionary nature of section 1226(a), which permits the Attorney General to "continue to detain" arrested aliens instead of granting them bond. *See* 8 U.S.C. § 1226(a)(1)–(2). Immigration judges, who "act as the Attorney General's delegates in the cases that come before them," presumably enjoy the same discretion and can exercise it by denying bond-hearing requests. *See* 8 C.F.R. § 1003.11(a). Accordingly, the Government did not violate federal regulations by denying Hernandez a bond hearing. *See id.* §§ 236.1(d)(1), 1236.1(d)(1).

### 3. Due Process

Third, Hernandez argues that the Government denied him due process by detaining him despite his SIJ status and deferred action,[2] and by detaining him indefinitely without a bond hearing. *See* [Dkt. 3 at 5; Dkt. 4 at ¶ 42]. According to Hernandez, his SIJ status and deferred action, either together or separately, make him unremovable. [Dkt. 4 at ¶¶ 33, 42]. Therefore, he argues, the Government cannot lawfully detain him "pending a decision on removal" under either section 1225(b)(2)(A) or section 1226(a). *See id.* Hernandez's logic is sound, but the premise underlying his argument is not. An alien's SIJ status, standing alone, does not make him unremovable. *See generally Budhathoki v. Nielsen*, 898 F.3d 504, 508 (5th Cir. 2018); *Zheng v. Pogash*, 416 F.Supp.2d 550, 554 (S.D. Tex. Feb. 23, 2006). Rather, aliens with SIJ are merely eligible to apply for a visa or work authorization, which in turn confers legal status. *See Budhathoki*, 898 F.3d at 508 ("SIJ status provides *a path* for certain children to become lawful residents") (emphasis added). Similarly, deferred action does not grant aliens an enforceable right to remain in the United States. *See Texas v. U.S.*, 809 F.3d 134, 165–66 (5th Cir. 2015). It confers only "lawful presence" and eligibility for certain federal benefits. *Id.* at 166 Most importantly, it can be revoked "at any time." *Id.* Accordingly, neither Hernandez's SIJ status nor his grant of deferred action prevents the Government from instituting removal proceedings against Hernandez or detaining him during those proceedings. *See id.*; *see generally Budhathoki*, 898 F.3d at 508. Hernandez's first due-process argument fails as a result.

Hernandez also claims that, even if his SIJ status and deferred action do not shield him from removal, the Government violated his right to due process by subjecting him to "indefinite detention without bond." [Dkt. 3 at 5]. This argument fails because Hernandez is not detained indefinitely. *See Demore v. Kim*, 538 U.S. 510, 529 (2003); *Jennings*, 581 U.S. at 304. The Supreme Court has repeatedly held that detention pending removal has a definite end point—the end of removal

---

[2] USCIS revoked Hernandez's deferred action after Hernandez filed his initial habeas petition. [Dkt. 3 at 5]. For purposes of its due-process analysis only, the Court assumes that Hernandez's deferred action is still valid.

proceedings. *Kim*, 538 U.S. at 529; *Jennings*, 581 U.S. at 304. Because Hernandez is not detained indefinitely, his second due-process argument also fails.

### 4. Administrative Procedure Act

Finally, Hernandez argues that the Government violated the APA by arbitrarily and capriciously terminating his deferred action. [Dkt. 3 at 5; Dkt. 4 at ¶ 44]. The Court lacks jurisdiction to decide the merits of Hernandez's APA claim, since it is "unrelated to the cause of [his] detention." *See Pierre*, 525 F.2d at 935–36. As the Court has already explained, the Government could lawfully institute removal proceedings against Hernandez and detain Hernandez during those proceedings despite his deferred action. Therefore, revoking Hernandez's deferred action had no bearing on the legality of his detention, and success on Hernandez's APA claim would not entitle him to immediate release from custody. *See Texas v. U.S.*, 809 F.3d at 165–66. Accordingly, Hernandez must bring his APA claim in a separate, non-habeas proceeding. *See Carson*, 112 F.3d at 820–21; *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).

## IV. CONCLUSION

Because Hernandez has failed to demonstrate by a preponderance of the evidence that his detention violates federal law, he cannot obtain habeas relief under 28 U.S.C. § 2241(c)(3).

It is therefore **ORDERED** that Hernandez's Amended Petition for Writ of Habeas Corpus [Dkt. 4] is hereby **DENIED**.

It is further **ORDERED** that Hernandez's Motion for Temporary Restraining Order [Dkt. 2] is hereby **DENIED AS MOOT.**

It is further **ORDERED** that Hernandez's Amended Motion for Temporary Restraining Order [Dkt. 3] is hereby **DENIED AS MOOT.**

It is further **ORDERED** that Hernandez's claim under the Administrative Procedure Act is hereby **DISMISSED WITHOUT PREJUDICE.**

This constitutes a **FINAL JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 19th day of December, 2025.**

Michael J. Truncale
United States District Judge